Court of Appeal. Mr. Warden, the floor is yours. Thank you, Your Honor. May it please the Court? We are here after a markment hearing in the district court where when the district judge interpreted the claims the way he said he was going to interpret, then we conceded that summary judgment would be appropriate against us with respect to claim one so that we can get up here under that interpretation. It's a common type? Yes. As to the half-dozen contested or disputed issues in the claims that were issued in the district court, we believe the district judge got them almost all right, except for one. That has to do with whether or not the invention in question must be as limited to be permanently attached to the vehicle. Permanently? That's not part of the claim construction, is it? Pardon me? Permanently? Where does permanently come from? I don't see that in the district court's claim construction. I see that in arriving at the claim construction, there was some reference to the word permanent, but not in the construction itself, right? Well, what the district court found was that the— No, but that's correct, right? That's correct. The word permanent does not appear in the claim construction. I think that's correct. I can check it very quickly, but I'm pretty sure that's correct. I think the essence of what the court was saying, that the module had to be attached or affixed to the vehicle during use, or—and that's how he construed Claims 1 and 19. During use is not permanent. He said during—and during use may not be permanent, but he said during use of the vehicle rather than during use of the module. Had the court said during use of the module, we would have been happy. And actually, in his construction, he says just during use, if you look at what the judge did. But he clarified that he meant during use of the vehicle. We say that the module could be put on the vehicle, does the thing that infringes, and then either left on the vehicle or taken off. It doesn't matter because it doesn't perform any more functions after it does the infringing act. The court— So the module is part of the vehicle while the vehicle's at use? Yes. That's the way the court found it. But that, we think, is the incorrect construction of Claims 1 and 19. And the reason we think that is because—well, there's a myriad of reasons— Just give us the strong ones.  There's no words to that effect in the claims. And there are claims in which the module does have to stay attached to the vehicle. Those claims recite the words, in transit, does its work in transit, does its work in normal use. There were prior patents to this, as I'm sure the court knows, that did have the module restricted to use in transit, in normal use of the car. All these words connote a permanent attachment to the— But I'm missing something here. I'm just not clear on how you would draw the distinction—I mean, there's a distinction to exclude shop equipment. We're all clear on that, right? Yes. How would you then—what's wrong with saying, therefore, the alternative to that is it has to remain in the vehicle while the vehicle is in use? Because it doesn't have to. And so what's between the shop equipment? What would you say, then, is the correct construction? What's between the shop equipment? That would exclude the shop equipment. That excludes the shop equipment. This module doesn't have to be the shop equipment that is mounted in the shop and then used diagnostically on the car, as in the Merino patent that was distinguished around in the grandparent 900 patent. What this module can do, it does its work before the car is actually started and before it is moved in transit. It cannot, as a matter of logic and fact, do the work that we say it does, the invention, which is fundamentally downloading the control program, the original program, and uploading a new one. It can't be done when the car is in transit or in normal use because you then have, for a certain period of time, the car with no control program at all. The shop equipment doesn't do that at all. The Merino shop equipment doesn't do that at all. Those kinds of devices do not download and store the original program and then upload a new program. That's one distinction. Another distinction, Your Honor, would be, to answer that question, would be that it's irrelevant in a sense because the infringing act occurs when the combination is put together, as stated in Claim 1. It's an apparatus claim. We're not talking about a method claim. It's an apparatus in combination with the vehicle. As the court- Yeah, but when the change-out gets accomplished, does it make the structure thereafter irrelevant? It's a claim drawn to structure. Structure is the structure, permanent. Yes, and our point only is that it doesn't have to be permanent, and the court here is reading in permanence as though it's a limitation. Where? It's not in the claim construction. Because, in the Joint Appendix, page 13, which is in the middle of the district court's opinion, where the first phrase is interpreted, improvement in a vehicle, and the court construes that to mean a module that becomes part of the vehicle and is intended to remain part of the vehicle during use. Well, where does that say permanent? Well, I don't know. It doesn't say the word permanent, but I don't see anything unpermanent about that. That construction there would eliminate the possibility of using this module before you actually start the car to change out the memories, which would be the infringing act, and then unhooking the module and putting it in the glove box. This construction prevents you from doing that, from finding that. And the same thing is done... So your problem with this is it limits the invention to when the engine is turned on. Yes. Actually, the key is turned on when the invention actually works, because there's got to be power. But the car is not in normal use. It's not doing anything. So all you're saying is that our prior panel was right when it said that in transit was not a requirement of the claim. I am saying that, as you know, that in the Hypertech decision in 2003, this issue was in essence before the court then. We're not saying that case has any preclusive effect, but the reasoning there, as you pointed out, Your Honor, shouldn't be the same reasoning here. But it doesn't help you. It hurts you, the reasoning of the earlier case. Because it suggests that this requirement may adhere in a vehicle limitation, doesn't it? No, Your Honor. In fact, the reasoning in the Hypertech opinion was in fact that claims 1, 5, or 19, the same claims that we're here today on, did not include the in-transit or in-normal use limitation that the defendants in that case... I don't understand what you're saying. In the earlier opinion it says, this history suggested the phrase, an improvement in a vehicle which was carried through to claim 1 of the 948 patent may require the invention to be incorporated within or retrofitted to the vehicle. Well, you have to keep reading. In fact, this opinion did not consider that. This was just a suggestion, merely a suggestion. And it is the reason that we're here. Because the defendants in this case went to school on this opinion. And instead of positing that in-transit or in-normal use should be ready for the claim, they went back to this and said, well, we'll just take the suggestion from the court that the preamble, an improvement in a vehicle, connotes permanent attachment. And I think that you have to look at that in two ways. First is that the district court that construed the claim in the Utah case rejected that. It was not appealed. And so this court, when it looked at it, really, in essence, made no finding in that regard. It just simply made the suggestion. We don't know what they meant and what they might have come up with had it been examined. Second, when you, and so that is the issue posed here. That issue now has come with new defendants. It is posed here in this court today. And our argument, our fundamental argument, is that when you analyze that suggestion from the earlier case, it fails. It doesn't work. Mr. Warren, are you suggesting that the court applied a different claim construction than it stated? You seem to be, in the colloquy with Judge Dyke, he kept pointing out the word permanent isn't in there and so on and so on. And you kept saying, well, yeah, but the essence of it was in there. And we normally look at the language of the claim construction and we take it for what it says and we deal with it. But you seem to be suggesting that, no, no, we need to read something more into it because the judge treated it as if it said something more than his actual words. Is that right or not? What I can tell you is that the permanence or non-permanence was the fundamental issue before the court there. You are correct, Judge Dyke, that the district court did not use the word permanent. But the district court does say becomes part of the vehicle, intended to remain part of the vehicle, during the use of the vehicle. And doesn't that imply that when the vehicle is not being used, it could be taken out of the vehicle? Yes, but when the vehicle is not being used, it also can be used to change the program memory, which is our point. That's the third embodiment. But when you say used, are you talking about the ignition is on or you're talking about the wheels they're turning? No. The ignition is on only to provide power to the onboard computer. But what about when the vehicle is just sitting turned off, totally, in the garage? Well, I don't think… That's not in use. That's not in use. That's definitely not in use. But if the ignition is turned on, it's in use. If the ignition is turned on, we can quibble about whether that's in use or not. I'm just asking what you say the correct interpretation is. You say the judge was wrong, and I say, all right, if he was wrong, what's the right answer? Okay, the right answer is, on that question, it's not in normal use. When you just turn the key on, that's not normal use. And I think we left out the word normal when we were discussing it. And it's certainly not in transit. It's in a mode where you simply turn the battery power on, so that this device can actually access the memory and pull the program down. Well, his interpretation doesn't require that the memory change-out be occurring while the car is driving down the road. Agree? I think it does. Let's see how. Well, the module becomes part of the vehicle and is intended to remain part of the vehicle during use. Part just means it's hooked up. It doesn't mean it's turned on and doing anything. It just means it's physically coupled to the bus, electronically in communication. But it doesn't have to be doing anything. Well, that's true. That's exactly what we say. But the way he's interpreted during use, it's during use of the vehicle. Driving down the road? I think that's what was intended, yes. Is that dispositive, then, of the infringement question? I mean, I'm wondering, you're saying vehicle during use, what you're objecting to in the claim construction is vehicle in use should not be limited to just the drive while the car is driving. Right. So if... And you're saying, therefore, that you know this means something broader. In other words, just during use because of the analysis of infringement. I mean, how do we know that your interpretation of this language is the correct language? Well, because for all the reasons we put in our brief, I think... Because if you're trying to read vehicle in use only when it's moving, right? Right. But that seems inconsistent with your alternative reading, which says it's going to be permanent. Which means, I mean, that's why I didn't understand your argument. On the one hand, you're arguing this is too narrow, and on the other hand, you're arguing it's too broad. Oh, I don't mean to be saying this is too broad at all. I mean to be saying this is too narrow, Your Honor. Because the way the court has done it here, they would find no infringement for a module that comes in, changes the computer, downloads the program, is unhooked, and then the vehicle runs off. Such as the accused device. Right. Such as a stationary piece of shop equipment. Well, if in fact it would do that, but the ones in the art don't. All right, time has expired. We'll give you some rebuttal time back. Two minutes. Mr. Holzer, welcome. Please proceed. May it please the court. I think the court hit on it precisely, that this is an improvement in a vehicle, and it's not a piece of shop equipment. What we have is essentially a piece of shop equipment, an electronic screwdriver, as we characterized it in the brief. Yeah, but you've got a problem with Claim 19. I mean, it's true that the prosecution history shows that the improvement in a vehicle language was added to overcome Reno, right? But that language doesn't appear in Claim 19. Right. You've got a problem, and I don't read the district court's opinion as having reached that same construction with respect to Claim 19. The district court held on Claim 19 that it was invalid because it was anticipated by Barrett. But also the district court held that selectively controlling, which is language straight out of Claim 19, means making a decision to switch the control of the engine from the program mode provided in the originally provided memory to the additional program mode provided by the adapter module, with the adapter module remaining coupled to the bus such that the control of the engine can be switched back and forth between the originally provided program mode and the additional program mode. I don't hear that saying during use. No, it does not say during use. It just says that it remains coupled there so that you can switch back and forth between the two. That's not how our device operates. There's no switching back and forth in our device. You download our program in there, upload the other program, disconnect it, and you're done. If you want to go through and reverse the process, you can reverse the process. Yeah, but the problem is he didn't grant summary judgment of non-infringement on Claim 19 except to the extent that he found it invalid. Right. But as an alternative basis, if this court chose to do so, we did not file a conditional cross appeal because they're frowned on in the circuit. But there is an additional basis, and that is that this language means that our device does not infringe. And we also have additional arguments, such as superseding signal, which is in 19. We say superseding signal means that two signals must be present at the same time, which means that the device must be connected at the same time that the computer in the vehicle is sending a signal. And we urge that as a basis down below to find non-infringement. The court did not agree with us on that point and did not grant our summary judgment on that basis. On the anticipation, do you agree that Barrett doesn't disclose switching between the two programs? What Barrett discloses is that a mechanism by which the original program is maintained so that it is not improperly erased. What it talks about is in the form of the present invention, the reprogramming method follows a predetermined transfer protocol, which assists in preventing the existing computer program codes. No, I've read it, too. I mean, my question is whether it discloses switching between the two programs. No, it doesn't use that language. So how can it be anticipatory? It's anticipatory from the standpoint that it does the same thing that our device does, i.e., it maintains the original program so that if you want to reinsert it or you want to make sure it's protected in some regard, you can do that. But doesn't the invention disclose switches between the two programs, correct? Correct. That is correct. And the alleged anticipatory, the Barrett patent does not disclose that, correct? It does not talk about that. Isn't that a problem in terms of… Well, we believe that there's other prior art out there that we cited in our brief. I'm talking about Barrett here. The answer is you're correct. Okay. But there was no 103 invalidation, as I recall. It was only invalidated for anticipation because of Barrett. Correct. So if there's any limitation in any part of the claim that is not disclosed in Barrett, then the ruling is reversible. Well, I think that the court can look at the other examples of prior art that we cited and say that it is anticipated by those. We cite many other examples of switching devices. Did you present that argument to the district court and he or she just picked between several? Our summary judgment appendix is yay thick and it's full of prior art that does precisely exactly the same thing that a grain claims that his invention does. What sort of process was used to arrive at the summary judgment? I know there was a marking hearing, but in the resolution of the summary judgment motions with respect to the various claims on the various grounds, thick materials submitted presumably by both sides and then what? Was there oral argument or the decision just emerged or what happened? We filed a motion for summary judgment early on in the case. In part, as this court well knows, the Hypertech litigation preceded this litigation. Hypertech is not a party to this case. There was considerable discovery that was done in the Hypertech litigation and we had the benefit of that. Was there oral argument on the summary judgment motion? I am trying to recall whether there was or wasn't. I do remember the marking hearing. We had ample argument there. I do remember some conferences before the court in which this case was discussed, whether there was actually oral argument on the motions or not, to be honest about it. I can't recall precisely. Was there a full briefing on the motion? Full briefing on all of that. On summary judgment, not on the marking phase, but on the summary judgment phase. Yes. Now, the claim language that we were talking about with opposing counsel, the aspect of it while the vehicle during use. Correct. What is your interpretation of that? Does that mean when the vehicle is moving, is being driven? Yes. Okay, and then it's limited to that. Yes. And so if the vehicle is not in use, if the engine is not running, then we do not infringe. Isn't that problematic in terms of our earlier opinion where we rejected the in-transit interpretation? Well, this court precisely went out of its way to carve out the improvement in a vehicle. It didn't need to do that, but it did. And what it said is the history suggests that the phrase, an improvement in a vehicle which was carried through claim one in the 948 patent may require the invention to be incorporated within or retrofitted to the vehicle. And that's exactly what we believe the district court did. And that's the whole purpose of this invention. The whole purpose of this invention is to allow the driver, operator of a vehicle, to make on-the-fly changes if you pull into a fuel station. But that argument is more a permanency argument than when the vehicle is in use. I mean, what you're suggesting then is the construction is improvement in a vehicle is intended to mean that it's got to stay in the vehicle at all times. In other words, that it's a permanently affixed to the vehicle. It was certainly not intended to be a shop tool to be used for a brief period of time. I know. Let's not talk about what it's not. Let's talk about what it is. It's more like a radio. It's there. You're not even thinking about it when you get in your car. You get in your car and you decide, I want to listen to something on the radio. Well, there it is. You turn it on. Well, I don't want to listen to that station. I want to listen to this station. And you can arbitrarily make changes. They talk about arbitrarily, selectively, and so on and so forth. And so during use means in all times, whether it's operating, not operating. It's at all times. Well, I don't think in use means just sitting in the driveway and nothing going on. Maybe key on. I don't think that's included. Well, I mean, you said remaining part of the vehicle during use is what the district court said, and you're saying that that means permanent. I mean, you're agreeing with the opposing counsel that the intention with that language is to say it's permanent. I think the device can be removed, but it clearly is not a tool. It is something that is intended to have some degree of permanency, not permanent-permanent, but it's going to be in there for some period of time. It's not simply a tool which is temporarily used and then removed and stored someplace else. And what is the aspect of this construction that made it clear that there was no infringement? In other words, what's the accused device? Well, our device operates for a very short period of time, five minutes. It reprograms part of the program in the ECM, and then it's removed and stored someplace, and that's it. What does it look like? It's a little handheld device. It's about yea big. It's about the size of a VHS cassette tape. It's got a wire that comes out of it. You plug it into the diagnostic port. Is it used while the engine's on, or it can't be used while the car is in motion? Our devices cannot. But it's used when the engine is turned on. No. You key on to power up the ECM, and then you reprogram. The engine's not operating. The engine's not turning over. You haven't used the starter. And then you turn it off, and you're done. It takes about five minutes. And basically what it does is there's a lookup table in the ECM, and it goes in there and selectively modifies certain values in the lookup table for the operation of the engine. So you're basically saying we just have a smaller, more efficient shop tool like the old, big, clunky shop tools. It is a very small, very efficient, very quick shop tool. All right. I think we have your case clearly in mind. Mr. Warren. Two minutes for you, sir. Thank you, Your Honor. Let me just try to jump into that mess from your time, because I think it's clear that I actually argued at the Markman hearing that there was no argument on summary judgment at all. It came up during the context of the Markman hearing about this, what does during use mean? I'm sorry, I couldn't find the reference to it. The court said that that means during use of the vehicle, and I admitted at that point that that would mean there's no infringement under that construction. So here we are. That's the background that the court asked about. Let me try an analogy on this end use, if I may. Let's suppose what we're talking about is a disc that I've got with a new program on it from my computer, and it's an improvement in a computer instead of an improvement in a vehicle. I stick it into the slot. I can then have two choices, I think. One is I can run that new program from the disc, and the computer will run it. In that embodiment, it has to stay in the car or in the computer, because I'm actually accessing the program that's on the disc. Or I can do another thing, which is I can, assuming it's a writable disc, download the original program I have on my computer onto the disc so I can save it for safekeeping in case I ever need it again, upload the improved program onto my computer, and then I can run the new program on my computer from the hard drive of the computer. Whether I then take the disc out or not doesn't matter. It doesn't matter. And what the court has done in its construction is said it's limited me to situations where I don't take the disc out and I can't take it out. But in fact, in that analogy, I could take it out. All right. We thank both counsel. We'll take the case under advice.